UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
GARY SASS,

        Plaintiff,

  -against-

NEW YORK CITY TRANSIT
AUTHORITY, METROPOLITAN
TRANSIT AUTHORITY, MTA BUS
COMPANY, MANHATTAN AND
BRONX SURFACE
TRANSPORTATION OPERATING
AUTHORITY and MTA REGIONAL
BUS OPERATIONS,

        Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 21-CV-4255-FB-RLM

*Appearances*:
*For the Plaintiff*:
MICHAEL G. O'NEILL
217 Broadway, Suite 306
New York, New York 10007

*For the Defendants*:
STEVE S. EFRON
237 West 35th Street, Suite 1502
New York, New York 10001

**BLOCK, Senior District Judge:**

      In this federal-question action, Gary Sass alleges that was not hired as a bus mechanic by the New York City Transit Authority ("Transit") because he prevailed in a previous lawsuit against MTA Bus Company ("MTA Bus"). He claims that this constituted unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as well as the New York State Human Rights Law and the New York City Human Rights Law.

The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

# I

The following facts are taken from the parties' Rule 56.1 statements and supporting documentation. The facts are undisputed or, if disputed, presented in the light most favorable to Sass, with all reasonable inferences drawn in his favor. *See Doro v. Sheet Metal Worker's Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007).

Sass was hired as a "bus maintainer" by MTA Bus in 2007. He was later promoted to a supervisory position.

While making copies of a bus roster in 2008, Sass noticed that one of the copies came out with Nazi symbols on it. Sass made another copy, which he sent by interoffice mail to his immediate supervisor, Charlie Miller, along with a report explaining the circumstances under which he found it. Neither Miller nor any one else asked Sass about the incident.

Over a year later, Sass was talking with fellow supervisor Ganesh Totaram about an investigation into hate groups within MTA Bus. This prompted Sass to show Totaram the defaced roster, which he had kept in his locker. Although Sass explained that he had already reported the incident to Miller, Totaram insisted that Sass show it to upper management. Concerned because his handwriting appeared on the roster, Sass cut off the top of the paper and sent it to Robert Bruno, the

general supervisor of the depot. Bruno passed the roster on to Robert Picarelli, who opened an investigation.

Picarelli summoned Sass to Bruno's office to discuss the matter. Sass accurately described how he had found the document, but falsely stated that it had just happened. When Bruno noted that the bus numbers on the roster were not current, Sass admitted that incident had happened in March 2008. He further explained that he had sent the roster to Miller at the time.

Picarelli recommended disciplinary action against Sass and Totaram. MTA Bus's director of labor relations drafted charges of altering evidence, making false statements, and conducing unbecoming an employee against both men. A hearing officer found the charges substantiated; he suspended Totaram for 30 days and terminated Sass.

Sass then sued MTA Bus, alleging that his termination was unlawful because it constituted retaliation for reporting the incident. *See Sass v. MTA Bus Co.*, 6 F. Supp. 3d 229, 232 (E.D.N.Y. 2014). The case went to trial, with Judge Brodie presiding, after which a jury returned a verdict in favor of Sass. *See id.* Although Sass was awarded back and front pay, Judge Brodie declined to order reinstatement. *See Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 253-54 (E.D.N.Y. 2014).

Sass later took a civil-service examination to become a bus mechanic for

3

Transit. While MTA Bus and Transit are separate entities, they share an "Employment Operations Unit" in charge of hiring.

Sass passed the exam. In 2018, he was invited to begin Transit's pre-employment process. On his application, Sass disclosed his prior employment with MTA Bus. Under "Reason for Leaving," he wrote "taken out of service – fired." In the section asking the applicant to explain any terminations, he wrote:

> On November 2009 I was taken out of service by the MTA Bus Company charged with a disciplinary action.
>
> I was exon[e]rated and compensated by the Eastern District Federal Court in Brooklyn, NY, presided by the Honorable Judge Margo Brodie.
>
> Trial case ended on June 20th, 2013.

Efron Decl., Ex. K.

An Employment Operations associate, Juanita Chestnut, reviewed Sass's application. Her supervisor, Senior Director of Human Resources, Marisol Quinones-Gomez also saw at least that portion of the application describing the circumstances of Sass's dismissal and his subsequent lawsuit.

Chestnut sent a memorandum to MTA Bus's Superintendent of Maintenance, Joseph Sorrentino, seeking a "recommendation as to whether [Sass] should be appointed to the title indicated after reviewing the employee's record." Efron Decl., Ex. L. Pursuant to standard procedures, Chestnut emailed a copy of

Sass's employment file with the request but did not include Sass's application.

Sorrentino has no recollection of Sass or the memorandum because he "did thousands and thousands of these" requested. Efron Decl., Ex. J. However, his usual procedure was to review the employee's file, which would have revealed Sass's disciplinary proceeding and termination but not his lawsuit, which post-dated his employment. At his deposition, Sorrentino stated that he was not aware of the lawsuit; if he had been, he "would [have found] out what the results would have been" and passed the recommendation request on to MTA Bus's Chief Maintenance Office. *Id.*

In any event, Sorrentino sent the memorandum back to Chestnut, having checked the box for "Not Recommended for Appointment." Efron Decl., Ex. L. After "Reason," he wrote "Dismissal." *Id.* Chestnut reported Sass's recommendation to Quinones-Gomez along with those of several other candidates not selected because of their prior work records. On December 7, 2018, Transit sent Sass a letter informing him that he was "considered and not selected" for the position. Efron Decl., Ex. Q.

Sass filed a charge of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), which issued a right-to-sue

5

letter on June 17, 2021.  This lawsuit timely followed.[1]

## II

Sass's retaliation claim is evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  At the first step, he must "establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employee action; and 4) a causal connection between the protected activity and the adverse employee action." *Id.* at 844 (internal quotation marks omitted).

It is undisputed that Sass's lawsuit constituted protected activity and that Transit's decision not to hire him was an adverse employment action.  With respect to the second element, the defendants stress that Sorrentino was not aware of the lawsuit.  However, that argument assumes that Sorrentino was the relevant decision-maker.  While Sorrentino recommended against hiring Sass because of his termination from MTA Bus, the actual decision appears to have been made by Quinones-Gomez, who was apparently following standard practice in declining to

---

[1] Sass also alleged claims of age discrimination.  However, as he did not defend those claims in response to the defendants' motion for summary judgment, the Court deems them abandoned.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.").

6

hire an applicant with a prior termination. Unlike Sorrentino, there is evidence that Quinones-Gomez was aware of Sass's lawsuit.

Thus, Sass's ability to make out a prima facie case of retaliation turns on the fourth element—causation. The Second Circuit "has consistently held that proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Sass argues that he has direct evidence of retaliatory animus because his termination from MTA Bus was a "proxy" for his lawsuit. But the case he cites in support of that argument—*Donnelly v. Greenburgh Central School District No. 7*, 691 F.3d 134 (2d Cir. 2012)—demonstrates a flaw in his reasoning. In *Donnelly*, a probationary high-school teacher had taken medical leave pursuant to the Family Medical Leave Act. *See id.* at 137-38. When he returned, he received negative evaluations and was ultimately denied tenure, in part due to "excessive absences." *Id.* at 139. The Second Circuit held that that evidence "provides a sufficient basis to send the question of the [School] District's retaliatory intent to the jury to reach a final determination." *Id.* at 152.

7

In *Donnelly*, the explicit references to the plaintiff's absences provided an obvious connection between the employer's stated reason for denying tenure and its consideration of a prohibited factor—the plaintiff's use of FMLA leave. Here, by contrast, there is no evidence supporting Sass's argument that his termination was being used as a "proxy" for his lawsuit.

Nor can Sass rely on circumstantial evidence to establish his prima facie case. There is no evidence that Transit hired candidates with similar work records who did not engage in protected activity. And more than five years elapsed between the conclusion of his lawsuit and Transit's hiring decision. "While [the Second Circuit has] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory action, courts in this circuit have typically measured that gap as a matter of months, not years." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (internal quotation marks omitted). Sass briefly mentions that his application was Transit's "first opportunity" to retaliate against him, but that theory is viable only when coupled with temporal proximity. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) ("Here, this close temporal relationship [of four months] is made even closer by the fact that the adverse action occurred at the first actual opportunity to retaliate.").

Even if Sass had made out a prima facie case, the defendants have proffered a reason for not hiring him: his termination from MTA Bus. *See Zann Kwan*, 737 F.3d at 845 ("Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action."). Sass argues that this is not a legitimate, non-retaliatory reason because the termination was later found to be retaliatory by a jury. Indeed, lacking any direct or circumstantial evidence of retaliatory animus, he premises his whole case on the theory that the decision not to hire him was nevertheless unlawful because it was "tainted" by the motivation behind his termination.

The Court disagrees. No court has embraced the idea of imputing the motive for an adverse action by one actor to a subsequent action by another. Indeed, it seems to run counter to the well-established rule that the plaintiff must come forward with at least some evidence that the decision at issue was motivated by retaliatory animus.

Sass was terminated by MTA Bus. A jury found that that decision was, at least in part, retaliatory. He was then compensated for that wrongful action.

But the issue in this case is whether *Transit*'s decision not to hire him was similarly motivated. There is, as the Court has explained, evidence that Transit was aware of the lawsuit. But there is no evidence that any decision-maker—or,

9

indeed, anyone at Transit—was aware that Sass's lawsuit resulted in a finding of retaliation. For this reason, the Court concludes that Transit's proffered reason for not hiring Sass was a legitimate, non-retaliatory reason.

Thus, the burden shifts to Sass to show that the reason for not hiring him was pretextual. *See Zann Kwan*, 737 F.3d at 846. For the same reasons Sass cannot make out a prima facie case, he fails to offer sufficient evidence of pretext. To the contrary, the record demonstrates that Transit simply acted on the report from MTA Bus that Sass had been terminated for a disciplinary infraction. While that decision may have been ill-advised, nothing suggests that it was intended to retaliate against Sass for his lawsuit.

### III

For the foregoing reasons, the defendants' motion for summary judgment is granted.

**SO ORDERED.**

                                                    _/S/ Frederic Block_
                                                    FREDERIC BLOCK
                                                    Senior United States District Judge

Brooklyn, New York
May 10, 2024